STATE of Iowa, Appellee,

v.

Phillip Glenn CALDWELL,
Jr., Appellant.

No. 93–1744.

Supreme Court of Iowa.

March 29, 1995.

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds Lapointe and Shari Barron, Asst. State Appellate Defenders, for appellant.

Thomas J. Miller, Atty. Gen., Martha E. Boesen, Asst. Atty. Gen., Thomas J. Ferguson, County Atty., and Shawn Wehde, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, ANDREASEN, and TERNUS, JJ.

McGIVERIN, Chief Justice.

This case involves the interpretation of one of the foundational requirements for the admission of reputation testimony under the Iowa rules of evidence and Iowa case law—the requirement that the testimony be derived from comments made by "a general cross-section of the community." More specifically, we must determine whether this representativeness requirement is concerned with the variety of the nature of the comments made or with the variety of the sources of the comments made.

Focusing on the nature of the comments, the district court concluded that negative comments about a police officer, a witness for the State, are comments from a limited class. As a result, the district court refused to admit before the jury any of defendant's three character witnesses' proposed testimony concerning the police officer.

Upon defendant's appeal, we conclude that the district court erred by focusing on the nature of the comments and abused its discretion in excluding the offered reputation testimony of one of defendant's character witnesses, whose testimony was derived from a variety of sources in the officer's work community. Because we also conclude that the defendant was prejudiced by the exclusion of this testimony, we reverse the district

court's judgment in part and affirm in part, and remand for a new trial.

I. *Background facts and proceedings.* On October 2, 1992, Waterloo police officers Jeffrey Harrington and Mark Meyer were on duty, in uniform, and on patrol in their marked car.

After receiving a telephone message tip, the officers decided to locate the defendant, Phillip Glenn Caldwell, Jr. Both officers being familiar with the defendant and his vehicle, they spotted him driving his vehicle within fifteen minutes of beginning their search. They observed the defendant pull into and park in the parking lot of Fast Eddie's convenience store where the defendant was reporting to work. The officers then followed the defendant into the parking lot and parked in the spot to the left of and adjacent to the one occupied by the defendant. Officer Harrington was in the passenger side of the vehicle and therefore closest to the defendant.

Officer Harrington and the defendant got out of their vehicles and exchanged a brief greeting. Officer Harrington then grabbed the defendant's lower left arm and asked him to place his hands on the side of the defendant's vehicle. Complying with officer Harrington's request, the defendant turned toward his vehicle and placed his left arm upon the vehicle. Officer Harrington observed nothing in the defendant's left hand but could not see the defendant's right hand.

Suddenly, the defendant broke away and ran toward the rear of the vehicles and away from the convenience store. Officer Meyer chased after him and yelled back to officer Harrington to stay with the vehicles.

The chase continued through the convenience store parking lot and across the street into a railroad yard. According to officer Meyer, while he was chasing the defendant he observed a white object cupped in the defendant's right hand. Officer Meyer testified that he never lost sight of the defendant during the chase.

While in the railroad yard, the defendant stumbled a couple of times, and officer Meyer caught him. Officer Meyer testified that after he caught the defendant, the defendant threw an object which landed in an area of dirt, grass and weeds close to a fence.

Other officers arrived at the scene shortly after eight o'clock, and the defendant was taken into custody and placed inside a patrol car. Because it was dark, officer Meyer could not see the object that he said the defendant had previously thrown but estimated that the defendant had thrown the object about ten feet.

Officer Meyer and two other officers, officer Krogh and sergeant Ann Meyer, the spouse of officer Mark Meyer, searched the area for the object. Sergeant Ann Meyer located an object and pointed it out. Officer Mark Meyer picked up the object, a plastic baggie filled with an off-white substance, and put it in his pocket.

Shortly thereafter, officer Mark Meyer located the defendant's car keys on the ground next to the vehicles in the convenience store parking lot.

Officer Mark Meyer testified that he thought the defendant had the plastic baggie in his pants pocket before he put it in his hand, but the defendant testified he was wearing sweat pants and a tee-shirt, neither of which had any pockets, at the time he was taken into custody. Further, the defendant testified that he did not have anything in his hands throughout the incident, except his car keys. He explicitly denied having possession of any crack cocaine or throwing any object away from himself.

On the day of his arrest, the defendant was driving a 1989 Chevy Blazer which he and his father had recently purchased. The Blazer did not have insurance on it and needed minor repairs. For these reasons, the defendant's father, Phillip Glenn Caldwell, Sr., had instructed his son not to drive it. In his testimony, the defendant explained that this admonition from his father was what had caused him to panic and run from the police officers.

A state laboratory report subsequently indicated that the off-white rock-like substance in the plastic baggie, found by sergeant Ann Meyer, contained cocaine base and weighed 23.23 grams. No drug tax stamps were found with the baggie. A state analysis of

the plastic baggie failed to recover any fingerprints. An identification technician testified that placing an object in a pocket could be detrimental to preserving possible fingerprints.

A trial information was filed charging the defendant with: (1) possession of a controlled substance, five or more grams of a mixture or substance containing cocaine base, with intent to deliver in violation of Iowa Code section 204.401(1)(b) (1991)[1], a class "B" felony; and (2) failure to affix a drug tax stamp in violation of Iowa Code section 421A.12[2], a class "D" felony.

A jury trial was held. The defendant called three witnesses to testify concerning officer Mark Meyer's alleged reputation for untruthfulness, but the district court refused to admit each of the witnesses' proposed reputation testimony before the jury.

The jury returned verdicts of guilty on both charges. The court entered judgment of conviction and sentenced the defendant to concurrent prison terms on the possession charge and the drug tax stamp charge.

Defendant appealed, contending that the district court abused its discretion by refusing to allow three of defendant's witnesses to testify concerning officer Mark Meyer's alleged reputation for untruthfulness.

II. *Scope of review.* Our review is for errors at law. Iowa R.App.P. 4.

■ The admissibility of reputation evidence falls within the trial court's sound discretion. *State v. Buckner,* 214 N.W.2d 164, 169 (Iowa 1974). When a trial court has exercised its discretion to exclude reputation testimony, we will reverse only if we find an abuse of that discretion and prejudice. *See State v. Myers,* 382 N.W.2d 91, 93 (Iowa 1986).

An abuse of discretion occurs when the trial court's ruling is based on untenable

grounds, *id.,* or its action is clearly unreasonable, *Galloway v. Zuckert,* 447 N.W.2d 553, 555–56 (Iowa App.1989) (citing *Blakely v. Bates,* 394 N.W.2d 320, 322 (Iowa 1986)), *cert. denied,* 494 U.S. 1057, 110 S.Ct. 1526, 108 L.Ed.2d 765 (1990).

■ If we find such an abuse of discretion, we must also determine whether that abuse was prejudicial. *See Myers,* 382 N.W.2d at 93. The test of prejudice is whether it sufficiently appears from the record that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice. *State v. Massey,* 275 N.W.2d 436, 439 (Iowa 1979) (citing *State v. Trudo,* 253 N.W.2d 101, 107 (Iowa), *cert. denied,* 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 189 (1977)).

III. *Admissibility of reputation evidence.* At trial the defendant offered three witnesses' testimony regarding officer Mark Meyer's alleged reputation for untruthfulness in an effort to impeach his credibility pursuant to Iowa Rule of Evidence 608(a).[3] Defendant apparently sought to challenge the credibility of officer Mark Meyer's testimony that defendant threw the baggie containing cocaine base against the fence during the chase. The State timely objected to each witnesses' testimony, generally arguing that the defendant had not laid the proper foundation for reputation testimony. The defendant then made an offer of proof by a voir dire of each witness outside the presence of the jury.

After hearing the testimony, the court sustained the State's objections, primarily on the basis that each of the witnesses' testimony was based on comments made by persons who had had an adverse contact with officer Mark Meyer in connection with his police duties and thus failed to satisfy the foundational requirement that reputation testimony be based upon the comments of a general cross-section of the community. We con-

---

1. This section is now Iowa Code section 124.401(1)(b) (1995).

2. This section is now Iowa Code section 453B.12 (1995).

3. Iowa Rule of Evidence 608(a) pertinently provides:

 a. *Opinion and reputation evidence of character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness....

clude that the district court erred by focusing on the nature of the comments rather than the source of the comments and abused its discretion by disallowing the testimony of one of defendant's reputation witnesses, Ray Dial.

■ **A.** *Foundational requirements for reputation testimony.* In order to properly introduce reputation testimony bearing on the credibility of a witness, strict foundational requirements must be met. *State v. Sill,* 199 N.W.2d 47, 49 (Iowa 1972). Several evidentiary facts must be established before a witness may testify as to what the witness has heard concerning another witness' reputation for truthfulness or untruthfulness. *Id.* These required facts include:

> (1) The background, occupation, residence, etc., of the character witness, (2) [The witness'] familiarity and ability to identify the party whose general reputation was the subject of comment, (3) Whether there have in fact been comments concerning the party's reputation for [truthfulness or untruthfulness], (4) The exact place of these comments, (5) The generality of these comments, many or few in number, (6) *Whether from a limited group or class as opposed to a general cross-section of the community,* (7) When and how long a period of time the comments have been made.

*State v. Hobbs,* 172 N.W.2d 268, 272 (Iowa 1969) (citing Dean Mason Ladd, *Techniques and Theory of Character Testimony,* 24 Iowa L.Rev. 518–29 (1939)) (emphasis added).

The foundational requirement at issue in this case is number (6): whether the witness' reputation testimony is based on comments from a limited group or class, which is not acceptable, or from a general cross-section of the community, which is acceptable.

■ **B.** *Meaning of "general cross-section of the community."* We have previously had the opportunity to more precisely define the terms in the phrase "general cross-section of the community" in *State v. Buckner,* 214 N.W.2d 164 (Iowa 1974). Regarding the term "community," we recognized that in modern times one's reputation may be better known where a person works than where a person resides. We then stated: "[C]om-

ments need not always come from a cross-section of an entire city or town. It is sufficient that they come from *a cross-section of those persons among whom the individual lives and acts." Id.* at 169 (citing 5 Wigmore, Evidence § 1615, at 487 (3d ed. 1940)) (emphasis added); *accord United States v. Oliver,* 492 F.2d 943, 946 (8th Cir.1974) ("[C]ourts have readily extended the concept of community to include the community in which one works, as well as where one lives.") (citations omitted), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976); McCormick, Evidence § 191, at 456 (Cleary ed. 1972) ("The reputation traditionally was said to be limited to that which obtained in the community where the accused lived, but this should be extended to embrace *any considerable group with whom he constantly associated in his business, work, or other continued activity,* and who might reasonably be thought to have a collective opinion about him.") (emphasis added).

■ We then implicitly defined the phrase "cross-section of persons." We noted that the purpose of this requirement is to foster two qualities necessary for the hearsay exception—reliability and trustworthiness. *Buckner,* 214 N.W.2d at 169; *see also* 5 Wigmore, Evidence § 1610, at 582 (Chadbourn rev. 1974) (stating that the hearsay exception allowing reputation evidence is justified by the circumstantial probability of trustworthiness derived from comments made by those who have a general interest in the subject). We then ruled that this purpose is served if the reputation testimony is based on comments from a representative number of persons who know of the reputation for truthfulness or untruthfulness of the target of the testimony through association with that person in that person's work. *Buckner,* 214 N.W.2d at 169. As a result, we held that the court would have acted well within its discretion in allowing the *Buckner* defendant's employer to testify as to the *Buckner* defendant's reputation for honesty because that testimony was based on comments from a representative number of persons who knew of and associated with him through work. *Id.*

*C. Representativeness of comments heard by defendant's reputation witnesses.* During the defendant's offer of proof outside the presence of the jury, each of the defendant's three witnesses testified as to the comments forming the basis of their proposed reputation testimony.

Defendant's first character witness was Phillip Glenn Caldwell, Sr., the defendant's father. Caldwell testified that, as a twenty-one year resident of Waterloo, he had heard comments from a couple of families who had "had some dealings with [officer Mark Meyer]" and other comments from a few young people who had "had some problems." Caldwell characterized the comments as being made by people with whom he worked, attended church, or did business.

Defendant's second witness, Elisha Culpepper, was a twenty-three year old student attending a university in Davenport, Iowa but who had grown up in Waterloo. Culpepper told the court that he had heard comments regarding officer Mark Meyer's deceitfulness from at least four persons. One comment was made by a person just before that person went to jail and another comment was made by a person who had had an "altercation with [officer Mark Meyer]." All of the comments were made by Culpepper's friends or by persons whom Culpepper knew by "just hanging around."

Defendant's final character witness was Ray Dial, a teacher in his fifteenth year with the Waterloo Community School District and a member of several community organizations. Dial testified that he could recall five or six specific remarks from students and other members of the community. One of these specific remarks came from a student whose boyfriend had had a problem with the officer and another came from a family whose complaint had stemmed from "an incident" involving officer Meyer. Each of these five or six remarks involved an allegation that officer Mark Meyer had tried to get someone arrested for drugs.

Dial also told the court that besides such specific comments, he had also heard several other members of the community remark that the officer "lied about stuff." Dial stated that "all of the comments that [he had] heard [had] come to [him] from people who either directly had a problem with [officer Mark Meyer] or [had] an interest in it because of a friendship or a family relation." Dial also stated that he had received the majority of this information through his role on related committees where he received complaints about police officers and that he had heard the information from a "pretty good chunk of all [of] Waterloo ... whether black, white, young, old, male or female."

■ Regarding each of the witnesses' testimony, the trial court determined that it was derived from a limited class which was not representative of officer Mark Meyer's work community. In making these determinations, however, the trial court, agreeing with the State, focused on the *nature* of the comments. Specifically, the trial court ruled that the comments were derived from a limited class because they were made by persons who had had a bad experience with officer Mark Meyer in connection with his official duties.

■ As we have described, however, the foundational requirement that comments come from "a general cross-section" of the community is concerned with the variety of persons making the comments rather than with the persons' reasons for making the comments. This is especially true with reputation testimony because the comments will usually be based upon either a good or a bad experience, depending on whether the testimony is for truthfulness or untruthfulness. For example, had the offered reputation testimony involved a police officer's reputation for honesty and had such testimony been based on comments made by a representative number of the officers working with the target officer, the fact that each officer's comment had been based upon a good experience with that officer would not be grounds for excluding the testimony. Thus, the trial court's grounds for sustaining the State's foundational objections to each of the witnesses' testimony are clearly untenable.

Looking at the appropriate inquiry, we think the summaries of the witnesses' testimony demonstrate that only Dial's testimony is derived from comments made by a repre-

sentative number of the people among whom officer Mark Meyer is known and works. Both Caldwell's and Culpepper's testimony was supported only by a few remarks made by their friends. On the other hand, Dial's testimony was based on comments made by numerous persons with various backgrounds and connections to the community, including school activities, religious functions, and community organizations. Accordingly, we conclude that Dial's testimony was based on comments from a general cross-section of officer Mark Meyer's work community, but that Caldwell's and Culpepper's testimony was derived from comments from a narrow, nonrepresentative group.

■ IV. *Disposition.* Having concluded that Caldwell's and Culpepper's testimony falls short of meeting the foundational requirement that reputation testimony be based on comments from a representative number of persons in the relevant community, we find no abuse of discretion and affirm the trial court's exclusion of their testimony. *See Hobbs,* 172 N.W.2d at 272–73.

■ However, we find an abuse of discretion and disagree with the trial court's refusal to admit the reputation testimony offered by Ray Dial because his testimony did fulfill the "general cross-section" foundational requirement.

■ Moreover, we conclude that the defendant was prejudiced by the trial court's exclusion of this testimony. *See Massey,* 275 N.W.2d at 439. Dial's testimony, which alleged officer Mark Meyer had a widespread reputation for untruthfulness, was an integral part of the defendant's argument that officer Mark Meyer's testimony about the defendant throwing a baggie containing cocaine base was fabricated. As a result, we must reverse the trial court's ruling and remand for a new trial where Dial's reputation testimony, on a record similar to that made in the present case, may properly be considered by the trier of fact.[4]

Having made these determinations, we need not address any of the other contentions urged by the parties.

4. We make no determination whether the defendant's witnesses' reputation testimony met the

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

other six foundational requirements of *State v. Hobbs,* 172 N.W.2d 268, 272 (Iowa 1969).