STATE of Iowa, Appellee,

v.

Paul Jay GREENE, Appellant.

No. 97–850.

Supreme Court of Iowa.

March 24, 1999.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik and Stephan J. Japuntich, Assistant State Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kimberly Griffith, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL, and TERNUS, JJ.

TERNUS, Justice.

A jury found the defendant, Paul Greene, guilty of multiple drug offenses. Greene appeals his convictions, raising three issues: (1) the trial court abused its discretion in denying him the opportunity to impeach one of the State's witnesses; (2) the evidence was insufficient to support his conviction of distribution of a controlled substance to a minor, *see* Iowa Code § 124.406(1)(a) (1995); and (3) the trial court abused its discretion in refusing to grant a mistrial due to prosecutorial misconduct. Finding no basis for reversal, we affirm.

I. *Background Facts and Proceedings.*

The jury could have found the following facts. Law enforcement officers from the Waterloo and Cedar Falls police departments

conducted an ongoing investigation of possible drug trafficking by Greene, his roommates Chad Kane (a minor) and James Reese, as well as Kim Paradine, Pam Truax, and Glen Steils. The officers obtained search warrants to search the trailer shared by Greene, Kane and Reese, and to search the residences of Paradine and Steils.

On the day the search warrants were issued, the authorities received information that persons from the trailer would be going to one of the other residences to obtain methamphetamine for resale at the trailer. The officers staked out the trailer and observed individuals entering the trailer, staying for ten or fifteen minutes, and then leaving.

Eventually two individuals from the trailer left in a vehicle; the officers followed in an unmarked car. The police were able to identify the occupants of the vehicle as Kane and Reese. Kane and Reese drove to Paradine's house, but apparently found no one home. (Officers would later learn that Paradine had left to buy methamphetamine.) The men then drove around for a short time, ultimately returning to Paradine's residence. They entered the house, stayed a short time, and then returned to their vehicle.

Meanwhile, other officers executed a search warrant at Greene's trailer. Greene and five other individuals, including two minors, were present in the living room. A search of the trailer resulted in the discovery and seizure of the following drugs and drug-related items: from the living room, some loose marijuana and a large joint found on a table, a cigar box on the table containing approximately 140 hits of LSD, a postal scale, a marijuana bong, and a notebook appearing to contain records of drug sales; from a bedroom, a safe containing six hits of LSD and a bottle of a pharmaceutical used as a cutting agent for methamphetamine, a beam scale, a canister containing bindles or trifolds used to hold methamphetamine for sale, and two mirrors used to chop methamphetamine; and from the rear bedroom, a "buzzbee" used to smoke marijuana and another notebook containing drug records, including a snitch list. During execution of the warrant, Reese and Kane returned. They were searched and the police discovered two "eight balls" of methamphetamine on Reese, weighing approximately 6.86 grams. On the same day, the authorities executed the other search warrants and arrested Paradine, Truax, and Paradine's boyfriend.

After several amendments to the trial information, Reese and Greene were charged with the following crimes: (1) possession with intent to deliver methamphetamine in violation of Iowa Code section 124.401(1)(c); (2) possession with intent to deliver LSD in violation of Iowa Code section 124.401(1)(a); (3) failure to affix a tax stamp in violation of Iowa Code section 453B.12; and (4) possession of marijuana in violation of Iowa Code section 124.401(3). In addition, Greene was charged with distribution of a controlled substance to a minor. *See* Iowa Code § 124.406(1). After a joint trial, the jury returned guilty verdicts on all charges. Greene appealed.

## II. Did the Trial Court Abuse its Discretion in Refusing to Allow the Defendant to Impeach a Witness with a Specific Instance of Misconduct?

A. *Procedural background.* At trial, the State called officer Richard Knief, a nineteen-year veteran of the police force who was actively involved in the investigation and arrests of the defendants. Knief testified extensively concerning the surveillance of the three residences, the activity leading up to the issuance of the search warrants, his role in the execution of the warrants, and the items seized from the residences searched. In addition to testifying as a fact witness, Knief also testified as an expert witness with respect to illegal drugs and drug dealing.

During cross-examination of this witness, Greene sought to impeach Knief with a ruling issued by a federal district court judge in an unrelated case. In the federal ruling, the judge had suppressed evidence seized pursuant to a search warrant, finding Knief had made false, or at least misleading, statements to the judge issuing the warrant. Greene asserted this incident showed Knief's propensity for dishonesty. The district court sustained the State's objection to this evidence, ruling that any relevancy of the evidence to the witness's credibility was "far outweighed

by the waste of time and needless consideration of extraneous issues."

On appeal, Greene claims this evidence was admissible under Iowa Rule of Evidence 608. Rule 608 governs the admissibility of evidence concerning the character or conduct of a witness as it reflects on the witness's credibility. The rule states in relevant part:

(a) **Opinion and Reputation Evidence of Character.** The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness....

(b) **Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, ... may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness....

Iowa R. Evid. 608.

■ B. *Scope of review.* We review a trial court's ruling on the admissibility of evidence under rule 608 for abuse of discretion. *See* Iowa R. Evid. 608(b) (allowing impeachment by specific instances of conduct "in the discretion of the court"); *State v. Caldwell,* 529 N.W.2d 282, 285 (Iowa 1995) (holding trial court's decision to exclude reputation evidence under rule 608(a) is reviewed for abuse of discretion). An abuse of discretion occurs when the trial court "exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable." *State v. Smith,* 522 N.W.2d 591, 593 (Iowa 1994). Even if an abuse of discretion is found, reversal is required only when the abuse is prejudicial. *See Caldwell,* 529 N.W.2d at 285 (requiring prejudice before reversing exclusion of testimony under rule 608(a)); *State v. Clark,* 325 N.W.2d 381, 383 (Iowa 1982) (holding erroneous ruling of trial court with respect to exclusion of evidence of prior acts of misconduct was not reversible because error was not prejudicial).

C. *Error preservation—rule 608(b).* The State initially contends that Greene did not

preserve error on the trial court's exclusion of this impeachment evidence under rule 608(b). We agree.

■ Iowa Rule of Evidence 103(a) provides:

(a) **Effect of Erroneous Ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

....

(2) *Offer of Proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

An offer of proof serves to give the trial court an adequate basis for its evidentiary ruling and to make a record for appellate review. *See State v. Lange,* 531 N.W.2d 108, 114 (Iowa 1995). Such a record is necessary so the reviewing court does not have to "base error on speculation as to the answers that would have been given to questions" had the questions been asked. *Id.*

■ Greene did make an offer of proof when the State objected to his attempted impeachment of Knief, but the State claims the offer was inadequate. In an offer of proof outside the presence of the jury, Greene elicited the following testimony:

GREENE'S COUNSEL: Judge [J]arvey made written findings of fact about the warrant [application] that you had written. Is that correct?

OFFICER KNIEF: Yes.

Q: And the findings of fact had to do in part with the search warrant that you had applied to Judge Bower in this court? A: Yes.

Q: You know what the judge wrote in his findings in [the federal court case]? A: Yes.

Q: The Assistant United States Attorney in charge of that case shared that with you? A: Yes.

Q: And the judge wrote this about you at.... Well, again, in the interest of time, I will just mention the pages, Your Honor, without a quotation.

At page 6 there is a one line statement regarding the information is simply not true.

At page 7 there is a one line statement that the warrant is further misleading in that it admits facts—and at page 11 in the middle of the page there is a long two sentence piece talking about how Officer Knief could not have entertained the thought that these statements could have been true.

With that, Your Honor, I have made my offer of proof.

A copy of the federal ruling was made a part of the trial court record.

█ In evaluating the sufficiency of this offer of proof for purposes of admission under rule 608(b), it is important to note the narrow scope of that rule. This part of rule 608 permits cross-examination of a witness concerning a specific instance of conduct by the witness; it does *not* permit such conduct to be proved by extrinsic evidence.

Here, Greene, through the offer of proof, sought to lay a foundation for admission of the federal court ruling and to make it a part of the record. This evidence, however, is extrinsic; it is not an examination "of the witness ... concerning his character for truthfulness or untruthfulness" or, more specifically, whether the witness told the truth in applying for the search warrant at issue in the federal proceedings. Thus, the offer of proof did not include the cross-examination that would potentially have been permissible under rule 608(b). If Knief would not have admitted that he had made untruthful or misleading statements in the warrant application, rule 608(b) would have prevented Greene from disproving Knief's denial by introducing evidence of the federal court ruling. *See Ripka v. Mehus*, 390 N.W.2d 878, 880 (Minn.Ct.App.1986) (interpreting similar Minnesota rule of evidence).

We have said that error is not preserved without an offer of proof "unless the whole record makes apparent what is sought to be proven." *Lange*, 531 N.W.2d at 114. Here, we do not know from the offer of proof whether Knief would have admitted that the statements he made in the warrant application in the other case were untruthful or

misleading. Nor is there anything in the record which makes clear what his testimony would have been. Without knowing what Knief's testimony would have been if he had been cross-examined within the bounds of rule 608(b), we have no way of determining whether any abuse in not permitting the cross-examination was prejudicial and, therefore, constituted reversible error. *See id.* (holding that prejudice would not be presumed "when the answer to the question is not obvious and the proponent made no offer of proof"). Thus, we conclude that error was not preserved on this issue.

█ D. *Admissibility of evidence under rule 608(a).* Alternatively, Greene suggests that Judge Jarvey's ruling was admissible as opinion evidence under rule 608(a). This argument is flawed, however, because the federal court ruling did not address Knief's character; that ruling merely described a specific incident of misconduct by Knief. This distinction is important because rule 608(a) only allows testimony directed to a witness's "*character* for truthfulness or untruthfulness." Iowa R. Evid. 608(a) (emphasis added); *see Wilson v. City of Chicago*, 6 F.3d 1233, 1239 (7th Cir.1993) ("The telling of a lie not only cannot be equated to the possession of a *reputation* for untruthfulness, but does not by itself establish a *character* for untruthfulness, as the rule explicitly requires whether the form of the impeaching evidence is evidence of reputation or opinion evidence." (Emphasis in original.)); *United States v. Nazarenus*, 983 F.2d 1480, 1486 (8th Cir.1993) (holding that testimony concerning a specific act of defendant was not admissible under rule 608(a) because it was "not in the form of opinion or reputation as required by the rule"); *United States v. Cortez*, 935 F.2d 135, 139 (8th Cir.1991) ("Opinion testimony may be admitted to support the credibility of a witness if ... the testimony refers *only* to the witness's character for truthfulness." (Emphasis added.)); Iowa R. Evid. 608 comm. cmt. (stating that "[r]ule 608(a) expands the admissible impeachment testimony to reputation and opinion ... and *requires that the attack be directed to the trait of untruthfulness*" (emphasis added)); 3 Jack B. Weinstein & Margaret A. Berger,

*Weinstein's Evidence* ¶ 608[04], at 608–25, 608–27 (noting that rule 608(a) allows a witness to state his or her "opinion of the principal witness's character for truthfulness," but does not allow the witness to testify to specific acts of misconduct). Because rule 608(a) cannot serve a basis for admission of the federal court ruling, we hold the trial court did not abuse its discretion in refusing to allow the offered impeachment evidence.

III. *Is the Evidence Sufficient to Prove that Greene Violated Iowa Code Section 124.406(1)(a) by Distributing a Controlled Substance to a Minor?*

In order to establish a violation of section 124.406(1)(a), the State must prove (1) that the defendant is eighteen years of age or older, (2) that the defendant unlawfully distributed a controlled substance to another individual, and (3) that the other individual was under the age of eighteen at the time the controlled substance was delivered. *See* Iowa Code § 124.406(1)(a). The State's theory on the charge of distributing a controlled substance to a minor was that Greene gave LSD to his roommate Kane, a minor. Greene contends there was no evidence to support a finding of distribution because he and Kane were co-owners of the LSD.

A. *Error preservation.* Greene concedes on appeal that his counsel failed to preserve error on this issue. Although counsel made a general motion for judgment of acquittal, he failed to identify in the district court the specific elements of the charge that were insufficiently supported by the evidence. *See State v. Crone,* 545 N.W.2d 267, 270 (Iowa 1996) (holding error not preserved where motion for judgment of acquittal does not point out the specific deficiencies in the evidence).

■ B. *Ineffective assistance of counsel.* Recognizing that error was not preserved, Greene argues on appeal that his trial counsel was ineffective in failing to make an adequate motion for judgment of acquittal. To prevail on his ineffective-assistance-of-counsel claim, Greene must show that his trial counsel failed to perform an essential duty and that prejudice resulted from this failure. *See State v. Ceaser,* 585 N.W.2d 192,

195 (Iowa 1998). We may affirm if either element is lacking. *See Crone,* 545 N.W.2d at 270. Because we think Greene's trial counsel did not omit an essential duty in failing to challenge the sufficiency of the evidence on the distribution element of the distributing-a-controlled-substance-to-a-minor charge, we discuss that element of Greene's ineffective-assistance claim.

■ To fail in an essential duty means the attorney's performance falls outside the normal range of competency. *See Ceaser,* 585 N.W.2d at 195. "[C]ounsel is not incompetent in failing to pursue a meritless issue." *Id.* That is the deficiency in Greene's ineffective-assistance-of-counsel claim—the issue he claims counsel should have raised at trial has no merit. We now turn to that issue.

■ C. *Sufficiency of the evidence on distribution element.* In evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the State. *See State v. Welch,* 507 N.W.2d 580, 583 (Iowa 1993). Evidence is substantial if it could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *See State v. Moore,* 529 N.W.2d 264, 265 (Iowa 1995). Our task, then, is to examine the evidence to decide whether a rational jury could have found that Greene distributed LSD to Kane.

The word "distribute" is statutorily defined to mean "to deliver other than by administering or dispensing a controlled substance." Iowa Code § 124.101(11). The term "deliver" is also defined in chapter 124 as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, *whether or not there is an agency relationship.*" *Id.* § 124.101(7) (emphasis added). The State relies on evidence from a witness who testified at trial that he saw Greene in possession of a sheet of blotter paper impregnated with LSD. According to the witness, such sheets are cut into squares that constitute the individual dosage units of the drug. The witness heard Kane ask Greene whether Greene was going to let Kane have part of the sheet. Greene then cut the sheet in half and gave a piece of the paper to Kane. The witness identified the

sheet of paper at trial; it was shown to contain 140 doses of LSD.

Greene argues that Kane was a co-owner of the LSD, and therefore there could be no delivery of the LSD from Greene to Kane. Greene relies on cases that hold there is no delivery between two individuals who simultaneously and jointly acquire a drug. *See United States v. Swiderski,* 548 F.2d 445 (2d Cir.1977); *People v. Edwards,* 39 Cal.3d 107, 216 Cal.Rptr. 397, 702 P.2d 555 (1985) (en banc). The Second Circuit Court of Appeals explained the rationale for its holding as follows:

> [W]here two individuals simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together, their only crime is personal drug abuse[,] simple joint possession, without any intent to distribute the drug further. Since both acquire possession from the outset and neither intends to distribute the drug to a third person, neither serves as a link in the chain of distribution.

*Swiderski,* 548 F.2d at 450.

In *Moore,* we refused to apply this rationale where both owners did not actively and equally participate in the purchase of the drugs, even though the drugs were acquired for the personal use of the joint owners. 529 N.W.2d at 265. We said:

> By including transfers from an agent to a principal within the definition of delivery, we think the legislature intended to reach individuals who serve as a link in the chain of distribution. Consequently, we apply the rule ... that a person who purchases drugs and later shares them with others has delivered a controlled substance even if joint funds have been used to finance the purchase.

*Moore,* 529 N.W.2d at 266.

█ The facts before us here are even further distinguished from those of the *Swiderski* case. Even if we assume that Kane and Greene "simultaneously and jointly" acquired possession of the drug, a fact not shown in the record, there was abundant evidence that the LSD was purchased for resale, not just for the personal use of Kane

and Greene. One witness testified that she saw Greene give hits of LSD to Kane and that Kane then gave some of the hits to a third individual. Another witness testified that Reese told him "they" had LSD and asked the witness if he knew anyone who wanted some. Paradine routinely took LSD as payment for the methamphetamine she sold Reese and Greene. And, finally, there was testimony that 140 hits of LSD were more than what an individual would typically have for personal consumption. Therefore, unlike the defendants in *Swiderski,* Greene and Kane *were* shown to be links in the chain of distribution. The mere fact that they may have been co-owners of the drug is not enough to insulate Greene from criminal liability for distribution of a controlled substance to a minor. *See Welch,* 507 N.W.2d at 583 (holding that section 204.406(1)(a) (subsequently recodified as section 124.406(1)(a)) "does not require a transfer of legal title in order for delivery, and therefore distribution, to occur").

We conclude that the evidence was sufficient to convince a rational trier of fact beyond a reasonable doubt that Greene distributed LSD to Kane, in violation of section 124.406(1)(a). Therefore, there is no merit to the issue that Greene claims his trial counsel should have raised in his motion for judgment of acquittal. Accordingly, Greene's trial counsel did not fail to perform an essential duty, and therefore, Greene has not established that he received ineffective assistance from his trial counsel.

IV. *Did the Trial Court Abuse its Discretion in Refusing to Declare a Mistrial due to Prosecutorial Misconduct?*

█ A. *Standard of review.* "[T]rial courts [have] broad discretion in ruling on claims of prosecutorial misconduct." *State v. Thornton,* 498 N.W.2d 670, 676 (Iowa 1993). Therefore, we review a district court's ruling on a motion for mistrial based on prosecutorial misconduct for abuse of discretion. *See id.* We find an abuse of discretion only where (1) there is misconduct, and (2) the defendant was so prejudiced by the misconduct "as to deprive the defendant of a fair trial." *State v. Anderson,* 448 N.W.2d 32, 33

(Iowa 1989). Thus, "[i]t is not the prosecutor's misconduct [that] entitles a defendant to a new trial, but rather any resulting prejudice [that] prevents the trial from being a fair one." *Id.*

B. *Background facts.* After his arrest, Reese gave an incriminating statement to the police. In that statement he admitted purchasing two "eight balls" of methamphetamine from Paradine on the day the search warrants were executed. He also admitted that he had purchased drugs from Paradine in the past. In addition to incriminating himself, he also inculpated Paul Greene and another man by the name of Paul, the confidential informant used by the authorities in its investigation of the defendants.

This statement became a focal point when the State sought to consolidate the trials of Reese and Greene. Greene objected, claiming he would be unfairly prejudiced by a joint trial due to the inculpatory statement given by Reese. Greene filed a motion to sever and, in the alternative, asked that Reese's statements implicating Greene be excluded. The court denied the motion to sever, but ruled that "[t]he State shall present no evidence that Reese made *any* statement inculpating Greene. The State shall instruct its witnesses accordingly and shall excise from defendant Reese's written statement all inculpatory references to defendant Greene." (Emphasis added.)

During the direct examination of Paradine, the prosecutor attempted to elicit testimony from the witness as to whether she had any information that one of the "eight balls" found on Reese was, in fact, for Greene. Greene moved for a mistrial. He argued that the State had violated the trial court's pretrial order prohibiting testimony concerning Reese's inculpatory statements about Greene. This order was violated because, Greene contended, any knowledge of Paradine as to who the "eight balls" were for came from Reese. The prosecutor replied that her question had not been about Reese's statement, but about Paradine's understand-

ing. The court agreed that the prosecutor's question did not call for a repetition of any statement by Reese, and so overruled Greene's motion for a mistrial. Paradine then answered the prosecutor's question, stating that she did not remember who the "eight balls" were for. Later in the trial Reese's statement was read into evidence with all references to Greene redacted.

Greene made a second motion for mistrial during closing arguments. At that time the prosecutor said:

> [I]n this confession defendant Reese indicates he was getting 1/8th for himself. When he said 1/8th, doesn't mean 1/8th for his personal use. Don't be confused on that. *Kim Paradine testified the other one was for defendant Greene.* So it's a joint operation.

(Emphasis added.) Greene argued again that the State was bringing up material that had been redacted from Reese's statement, in violation of the court's pretrial order. Again, the court overruled Greene's motion, agreeing with the State that the prosecutor was not talking about any statement by Reese, but rather about what Paradine said. Notwithstanding the court's denial of Greene's motion for mistrial, the court admonished the jury to disregard the prosecutor's statements.

On appeal, Greene argues that the court abused its discretion in refusing to grant a mistrial. He claims that the prosecutor's examination of Paradine and the prosecutor's statement in closing argument in reference to this examination violated the court's pretrial order excluding any statements of Reese that were inculpatory of Greene. Greene also claims that the prosecutor misrepresented Paradine's testimony insofar as Paradine never testified that one of the "eight balls" was for Greene; to the contrary, Paradine stated that she could not remember.[1]

C. *Prosecutorial misconduct.* We first consider whether there was prosecutori-

---

1. While we have doubts that the latter argument was preserved for review, in the interest of not lengthening this opinion, we will consider this claim in the context of Greene's contention that

the trial court abused its discretion in denying his motion for mistrial, rather than separately as an ineffective-assistance-of-counsel claim.

al misconduct. We agree with the trial court's conclusion that the prosecutor's questioning of Paradine and later reference to Paradine's testimony did not violate the court's pretrial order. This questioning was directed to Paradine's knowledge, not to statements made by Reese to the police after his arrest. Even though Paradine's knowledge may have been based on statements made by Reese, they were statements made to *her*, not to the police, and therefore were not encompassed within the court's pretrial ruling.

We are, however, concerned about the prosecutor's misrepresentation of Paradine's testimony. As this court has previously pointed out, "[i]n closing arguments, counsel is allowed some latitude. Counsel may draw conclusions and argue permissible inferences which reasonably flow from the evidence presented. *However, counsel has no right to create evidence or to misstate the facts.*" *Thornton,* 498 N.W.2d at 676 (emphasis added). The State acknowledges on appeal that the prosecutor's argument did not accurately describe Paradine's testimony. Not only do we agree that the argument was inaccurate, we cannot attribute the prosecutor's statement to a "slip of the tongue." The admissibility of Paradine's testimony as to what Reese told her when he purchased the methamphetamine from her was the subject of debate on at least two occasions outside the presence of the jury. Moreover, the prosecutor's question of Paradine as to whether one of the "eight balls" was for Greene was the basis for a motion for mistrial. It is hard to believe that under these circumstances the prosecutor would forget Paradine's answer. We conclude the prosecutor was guilty of misconduct.

D. *Prejudice.* We next appraise whether the prosecutor's misconduct deprived Greene of a fair trial. In doing so, we "consider the whole trial, including the court's admonition to the jury." *Anderson,* 448 N.W.2d at 33. Whether the incident was isolated or one of many is also relevant; prejudice results more readily from persistent efforts to place prejudicial evidence before the jury. *See id.* Finally, we consider whether the evidence against the defendant is strong. *See id.*

A consideration of these factors leads us to the conclusion that the defendant was not prejudiced by the prosecutor's misconduct. We first note that the court admonished the jury to disregard the prosecutor's statement. Second, the prosecutor's mischaracterization of Paradine's testimony was an isolated incident. Third, and perhaps most importantly, the evidence in this case was exceedingly strong. The misrepresented testimony about Reese's purchase of methamphetamine for Greene was pertinent to the charge of possession of methamphetamine with intent to deliver. *See* Iowa Code § 124.401(1)(c). The State's theory on this charge was that Greene aided or abetted Reese's purchase of methamphetamine on the day in question, that Greene and Reese were involved in a common scheme to possess methamphetamine with the intent to deliver, or that Greene conspired with Reese to possess the methamphetamine. The evidence in support of this charge was strong and overwhelming.

Paradine testified that Greene and Reese, separately and together, had been regularly buying methamphetamine from her for about eight months, generally in quantities of an "eight ball" or more. There was expert testimony that such quantities are consistent with drug trafficking, not personal use. Paradine's testimony was corroborated by several other witnesses who had seen Greene and Reese together at Paradine's house, buying methamphetamine or waiting to buy it. Another witness saw Reese and Greene selling methamphetamine at their trailer and several witnesses testified they had purchased methamphetamine from Greene. The trailer occupied by Reese, Greene, and Kane contained many items consistent with trafficking in methamphetamine such as records of sales, a snitch list, trifolds for packaging small amounts of the drug, a cutting agent, and scales. As the State argues, "[t]his evidence amply warranted the conclusion that Greene and Reese were jointly involved in an on-going methamphetamine-trafficking scheme."

The events on the day Reese purchased the methamphetamine in question are also consistent with this conclusion. Reese and Kane left the trailer they shared with Greene and purchased 6.86 grams of methamphetamine at Paradine's house. This was an amount that exceeded what one would have for personal use. After making this purchase, Reese and Kane returned to the trailer where Greene had remained with four persons who were not residents of the trailer. It is reasonable to infer that Greene was waiting with potential customers while his co-conspirators obtained the drugs.

In summary, we think the prosecutor's isolated misrepresentation of Paradine's testimony is insignificant in the context of the overwhelming evidence showing that Reese and Greene were engaged in an on-going drug-trafficking enterprise. Therefore, Greene was not deprived of a fair trial by the prosecutor's misconduct and accordingly, the trial court did not abuse its discretion in refusing to grant a mistrial.

V. *Summary.*

First, Greene did not preserve error on his claim under rule 608(b) that the trial court abused its discretion in refusing to allow him to impeach one of the State's witnesses with a prior incident of misconduct. Moreover, rule 608(a) does not apply to the attempted impeachment because the evidence offered by Greene did not address the witness's character. Therefore, the trial court did not abuse its discretion in excluding the offered impeachment.

Second, the evidence was sufficient to support the jury's finding that Greene distributed a controlled substance, LSD, to a minor. The mere fact that Greene and the minor jointly owned the drugs did not preclude a delivery, within the meaning of Iowa's drug statute, when possession was transferred from Greene to the minor. Therefore, Greene's trial counsel did not render ineffective assistance by failing to raise this issue in his motion for judgment of acquittal.

Finally, although the prosecutor was guilty of misconduct when she misrepresented the testimony of one of the State's witnesses, this misconduct was not prejudicial in view of the overwhelming evidence that Greene was involved in a common scheme or conspiracy to possess methamphetamine with the intent to deliver. Therefore, the trial court did not abuse its discretion in denying Greene's motion for a mistrial.

For these reasons, Greene has failed to establish a basis to reverse his convictions and so we affirm.

**AFFIRMED.**