# IN THE COURT OF APPEALS OF IOWA

No. 13-1710
Filed November 26, 2014

**ROBERT F. GANNON,**
        Plaintiff-Appellant,

**vs.**

**MAUREEN G. RYAN, MICHAEL C. RYAN,
and RYAN DATA EXCHANGE, LTD.,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Robert B. Hanson,

Judge.


        Plaintiff appeals the district court's judgment on a breach of contract claim.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH
DIRECTIONS.**


        Steven P. Wandro and Michael R. Keller of Wandro & Associates, P.C.,

Des Moines, for appellant.

        Brenda Myers-Maas of Myers Maas Law, P.L.C., West Des Moines, for

appellees.


        Considered by Danilson, C.J., Bower, J., and Sackett, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**DANILSON, C.J.**

Robert Gannon appeals the district court's judgment on a breach of contract claim, finding in favor of the plaintiffs, Maureen and Michael Ryan and Ryan Data Exchange, LTD.[1] Gannon contends the district court relied on improperly admitted evidence in finding that the terms of the contract did not include payment of interest, that Michael Ryan was not a party to the loan,[2] and that the debt was satisfied when the Ryans tendered a check for $5500. We find the court did not abuse its discretion in admitting evidence of bias and its error in taking judicial notice of two court files was not prejudicial. We also find substantial evidence supports the court's finding Michael Ryan was not party to the loan agreement and payment of interest was not a term of the loan agreement. Because we find the court erred in its conclusion that the debt was satisfied at the time the Ryans tendered the check for $5500, we reverse and remand with directions for judgment to be entered for Gannon for $5500 with instructions for him to return the Ryans' previous check. Accordingly, we affirm in part, reverse in part, and remand with directions.

**I. Background Facts and Proceedings.**

The following facts are undisputed:

In March of 1994, Gannon entered into an oral agreement to loan Ryan Data Exchange, LTD.[3] $7000 for an indefinite period of time.[4] About two years

---

[1] Ryan Data Exchange, LTD., goes by the fictitious name "Rydex, LTD."
[2] At trial, Gannon alleged both Michael and Maureen were individually parties to the loan. On appeal, he concedes that Maureen was not a party.
[3] It is disputed whether the loan was made solely to Ryan Data Exchange, LTD., or whether it was made to Maureen and Michael Ryan and Ryan Data Exchange, LTD., individually and collectively

later, Rydex, LTD. issued a check for $3016.06 to Gannon for partial payment. The accompanying written statement, created by Maureen, states the check was for $1500 principal and $1516.66 for "interest due on $7000.00 @ 10%." The same year, Rydex, LTD. reported to the Internal Revenue Service that it paid $1516.66 interest to Gannon.

The loan was not discussed again until November 2011, when Gannon questioned when he would be repaid the remainder owed. On December 12, 2011, Maureen sent Gannon a check drawn from Michael's personal account in the amount of $5500. The back of the check contained a handwritten restrictive endorsement, which stated, "Endorsement of this check considers said loan to be paid in full and releases any future claims against payor."

Gannon responded on December 15, 2011, with a letter to Maureen. It stated in part, "Thank you for the check for $5500 for partial payment of the loan to me. Unfortunately you have placed 'endorsement of this check considers said loan to be paid in full and releases any future claims against the payor.' As evidence of the 1996 1099-INT below you agreed to pay interest on this loan." On January 5, 2012, Gannon sent a similar letter to the Ryans and notified them he would not cash the check unless they released the endorsement restriction.

On July 20, 2012, Gannon filed a petition at law alleging breach of contract against Maureen and Michael Ryan and Ryan Data Exchange, Ltd. The Ryans admitted Gannon had loaned Rydex, LTD. $7000 but denied that they

---

[4] All parties agreed there was not a schedule for payments to be made. Rather, the loan recipient would pay back the money as they were able.

were personally included in the loan and that there had been an agreement to pay interest as a term of the loan.

A bench trial on the matter was held May 28, 2013.

At trial, Gannon testified Michael had called him in early 1994 and asked for a loan. He was unsure who he made the check out to specifically or who cashed it. Gannon stated Michael agreed to pay him back as soon as he was able and agreed to pay ten percent interest in the meantime. According to Gannon's calculations, the amount of outstanding principal and interest owed as of June 1, 2013 was $27,799.59.

Maureen testified that the first she learned of the loan was when she saw the deposit slip after the money was placed in Rydex, LTD's account. She claimed she issued the check for $3016.66 and created the invoice in June 1996 without discussing it with Michael. She did not pay the interest out of obligation but rather "as a gesture of thanks." She also testified she accidently wrote the December 2011 check on Michael's account rather than Rydex, LTD's account. Over Gannon's hearsay objection, Maureen testified that she chose to exclude Gannon from the family Christmas gift exchange because "[he] treated our mother poorly. [He] didn't come and see her for three years before she died. All she wanted was for [him] to come and see her."

Michael testified he had asked Gannon for a loan for the company. They agreed he would pay back the $7000 as soon as the company could afford it. He stated the first time Gannon mentioned the payment of interest on the loan was when he sent the letter in December 2011.

Anne Wasson, sister of Maureen and Gannon, testified on behalf of the defendants about the ongoing "intra-family dispute." The court gave Gannon a standing objection that her testimony was hearsay and inadmissible character evidence in violation of Iowa Rule of Evidence 5.608(b). The court allowed Wasson to testify and announced it would rule on the objections later. Wasson admitted having never heard about the loan from either the Ryans or Gannon before December 2011. Wasson testified that after their mother's death, Maureen and other siblings had an issue with the way Gannon was handling certain matters of the estate, such as the holding of the family auction. Wasson also testified that Gannon had previously accused Maureen of trying to hide assets from the family farm and that Gannon had disputed with members of the family regarding the deceased mother's trust.

Elizabeth Pyle, another sister of Maureen and Gannon, similarly testified that she had no knowledge of the loan before December 2011. Over the same standing objections, she also testified about Maureen excluding Gannon from the family Christmas gift exchange because of the intra-family dispute regarding the estate and Gannon's allegations concerning Maureen's handling of the memorial donations from the mother's funeral.

Maureen and Michael Ryan and Rydex, LTD. also asked the court to take judicial notice of two other legal matters involving members of the Gannon family and their mother's estate. Gannon objected that the two court files contained hearsay and inadmissible character evidence.

Following the trial, the court issued findings of fact, conclusions of law, and ruling on September 30, 2013. The court overruled all of Gannon's

objections, stating, "[T]he court overrules Gannon's objections to the defendants' introduction of evidence regarding the aforementioned family disputes. The court believes such evidence was admissible for attacking Mr. Gannon's credibility by showing his bias." One of the court's findings relied on the admitted evidence, stating:

> In or about 2011, Maureen and Mr. Gannon and other members of the Gannon family (their siblings) became embroiled in certain disputes involving the probate of their mother's estate and the administration of a trust created by her for the benefit of her children. This resulted in a considerable amount of family discord including, but not limited to, bad feelings between Mr. Gannon and Maureen arising from perceived wrongs, disrespect, and slights suffered by Mr. Gannon at the hands of Maureen.

The court found that Gannon had made the loan for $7000 to Rydex, LTD. only and that the oral agreement did not contain provisions for the payment of interest. The court found Gannon had been paid in full when he received the check for $5500 from Maureen Gannon in December 2011, and thus no breach of contract had occurred. The court entered judgment in favor of the defendants and dismissed Gannon's suit in its entirety. Gannon appeals.

## II. Standard of Review.

Generally, we review the district court's evidentiary rulings for an abuse of discretion. *See State v. Rodgriguez*, 636 N.W.2d 234, 239 (Iowa 2001). We review the court's hearsay rulings for corrections of errors at law. *State v. Reynolds*, 746 N.W.2d 837, 841 (Iowa 2008).

Because this case was pled and tried to the court as a law action, we review for corrections of errors at law. Iowa R. App. P. 6.907. The trial court's findings of fact have the effect of a special verdict and are binding upon us if

supported by substantial evidence. *Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc.*, 599 N.W.2d 684, 689 (Iowa 1999). We view the evidence in the light most favorable to the trial court's judgment. *Id.*

### III. Discussion.

#### A. Admission of Evidence.

Gannon contends the district court relied on improperly admitted evidence in finding the terms of the contract did not include payment of interest, the Ryans were not a party to the loan, and the principal was paid in full when the Ryans tendered a check for $5500. Specifically, Gannon contends the court abused its discretion in admitting character evidence in violation of Iowa Rule of Evidence 5.608 and hearsay evidence that was not admissible due to any exception. If we find an abuse of discretion, we must also determine whether that abuse was prejudicial. *State v. Caldwell*, 529 N.W.2d 282, 285 (Iowa 1995) "The test of prejudice is whether it sufficiently appears from the record that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice." *Id.* Admission of hearsay evidence over a proper objection is presumed to be prejudicial error unless the contrary is affirmatively established. *Frunzar v. Allied Prop. & Cas. Ins. Co.*, 548 N.W.2d 880, 887 (Iowa 1996).

The district court did not rule on the specific objections to the admission of evidence during the hearing or in its ruling. Rather, the court provided a blanket statement in its ruling that it "overrules Gannon's objections to the defendants' introduction of evidence regarding the aforementioned family disputes." The

court also stated, "The Court believes such evidence was admissible for purposes of attacking Mr. Gannon's credibility by showing his bias."

Gannon contends "significant portions of" his sisters' testimony was inadmissible evidence of his character. The defendants contend Gannon "opened the door" by offering the email between Gannon and Maureen that referenced the intra-family dispute and attacked Maureen's character. Although our case law recognizes an "opening the door" principle of evidence,[5] the rebuttal of the alleged attack on Maureen's character is not to attack Gannon's character. Even if Gannon opened the door to discussing the intra-family disputes, the principle does not allow the defendants to present otherwise inadmissible evidence. *See State v. Parker*, 747 N.W.2d 196, 207 (Iowa 2008) ("The rules of evidence open the door for the State to expose false statements and claims, but only as far as specifically provided by the rules."); *see also* 1 Kenneth S. Broun, et al., *McCormick on Evidence* § 57, at 402–03 (7th ed. 2013) ("This section is devoted to the question of rebutting inadmissible evidence. That questions differs from the issue of whether a party's introduction of evidence inadmissible under some exclusionary rule (such as hearsay) gives the adversary license to introduce other evidence which (1) is inadmissible under the same exclusionary rule but (2) bears on a different issue or is irrelevant to the original inadmissible

---

[5] The "opening the door" rule "pertains to the ability of a party to rebut inadmissible evidence offered by an adversary and provides that 'one who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is allowed to avail himself of the opening.'" *State v. Parker*, 747 N.W.2d 196, 206 (Iowa 2008) (quoting 1 John W. Strong, et al., *McCormick on Evidence* § 57, at 253 (5th ed. 1999)).

evidence. The 'opening the door' doctrine has not been extended that bar; the door does not swing that widely.").

The defendants also contend the sisters' testimony attacking Gannon's character is admissible pursuant to Iowa Rule of Evidence 5.608 because they "were allowed to offer opinion and reputation evidence of character to attack Gannon's character for truthfulness or untruthfulness." The sisters did not offer opinion or reputation evidence regarding Gannon's character for truthfulness or untruthfulness pursuant to rule 5.608(a). Rather, they testified about specific instances of conduct in order to attack his credibility, specifically his bias or ill will toward the Ryans.

The court also considered testimony from Maureen that Gannon objected to as inadmissible hearsay. In response to being asked her opinion of what caused Gannon to bring up the loan in November 2011, Maureen testified, in part, "You treated our mother poorly. You didn't come and see her for three years before she died. All she wanted was for you to come and see her." Gannon's objection was overruled. Maureen then stated again, "All she wanted was for them to come and see her—him to come and see her."

Rule 5.608(b) governs the admissibility of evidence concerning the conduct of a witness as it reflects on the witness's credibility. *See also State v. Greene,* 592 N.W.2d 24, 27 (Iowa 1999). "Under this rule, a party may not attack the credibility of a witness by showing specific instances of the witness's conduct through extrinsic evidence." *State v. Knox,* 536 N.W.2d 735, 740 (Iowa 1995). The sisters' testimony was extrinsic evidence, "it is not an examination of the witness . . . concerning his character for truthfulness or untruthfulness." *Greene,*

592 N.W.2d at 28. However, there is an exception to these rules when the evidence relates to bias of a witness. Our supreme court stated over one hundred years ago:

> One is not bound by the statement of a witness on cross-examination that he is not biased or prejudiced. This is not a collateral matter, but one which the party against whom the witness testifies may always show as a matter of substantive proof, unless so remote and collateral to the inquiry that it does not convict the witness of bias. Such is the almost universal voice of authority.

*State v. Johnson*, 144 N.W. 303, 305 (Iowa 1913). Further, courts universally hold that prohibitions against showing specific instances of misconduct in Federal Rules of Evidence, Rule 608 do not apply to evidence of bias or interest. *See Johnson v. Brewer*, 521 F.2d 556, 562 (8th Cir. 1975); *see also* 1 Broun, et al., *McCormick on Evidence* § 39, at 244 (7th ed. 2013) ("In courtroom parlance, facts showing bias are considered so highly probative of credibility that they are never deemed 'collateral,' the cross-examiner is not required to 'take the answer' but may call other witnesses to prove them.").

We also note that there is less need for stringent application of evidence rules in a bench trial than there is a jury trial. *State v. Farnum*, 397 N.W.2d 744, 746 (Iowa 1986). Here the court made explicit findings regarding the evidence in question and stated "that the evidence was admissible for attacking Mr. Gannon's credibility by showing his bias." *See State v. Weaver*, 608 N.W.2d 797, 804 (Iowa 2000) (minimizing various assignments of error because there was no indication in the trial court's findings that the trial judge relied on the inadmissible evidence). We acknowledge the court could have understood Gannon's testimony on cross-examination as not denying that he had a poor

relationship with Maureen, and the court could have used its discretion to curtail any further probe into the specific details of bias. The court also had discretion to control the extent of the proof. 1 Broun, et al., *McCormick on Evidence* § 39, at 244 (7th ed. 2013) (noting the district court "has the responsibility to see that the sideshow does not take over the circus"). In fact, the district court expressed his concern about how far to permit the proof in this case. However, because this was a bench trial and the evidence related to bias, we are unable to conclude the district court abused its discretion in permitting the otherwise extrinsic evidence of specific instances pertaining to Gannon's potential for bias against the Ryans.

Gannon also contends the district court abused its discretion by admitting into evidence the court files concerning other legal proceedings that involve the parties because of lack of foundation, lack of relevance, and because the files contain inadmissible hearsay and inadmissible character evidence. The defendants contend the district court properly took judicial notice of the other files. Except in proceedings on petition for habeas corpus, it is generally not permissible for a trial court to take judicial notice of proceedings in a related but wholly different case. *State v. Stergion*, 248 N.W.2d 911, 913–14 (Iowa 1976); *see also Harms v. Bennett*, 130 N.W.2d 734, 736 (Iowa 1964). Thus, the court could not properly take judicial notice of the other court files. "[A]dmission of hearsay evidence over a proper objection is presumed to be prejudicial error unless the contrary is affirmatively established." *Frunzar*, 548 N.W.2d at 887. Here, the court files all relate to the same internal family dispute which was the subject of the testimony of Maureen and the sisters. We conclude any error was

not prejudicial because it was simply cumulative of the other evidence related to bias.

### B. Parties to the Loan.

Gannon contends substantial evidence does not support the district court's finding that Michael Ryan was not a party to the loan agreement.

"A finding of fact is supported by substantial evidence if the finding may be reasonably inferred from the evidence." *Hubby v. State*, 331 N.W.2d 690, 694 (Iowa 1983). Here, the testimony of Maureen and Michael Ryan provides ample support for the trial court's finding. Michael testified that he asked Gannon for a loan on behalf of his company. He further testified that he the check was made out to Rydex, LTD. and deposited in the corporation's bank account. He testified he never personally guaranteed the loan and never used any of the funds for personal expenses. Maureen testified that she was unaware of the loan until she saw the money had been deposited in the bank account of Rydex, LTD. Although Gannon claimed Michael was a party to the loan agreement, he at one time stated he believed he had written the check out to Rydex, LTD. and had no knowledge concerning where the money was deposited or how it was used.

Gannon attempts to discredit the Ryans' explicit testimony regarding the parties to the loan by relying on Maureen's statement that "it was a loan between friends" and her understanding that the loan was to be repaid "when *we* were able." (Emphasis added.) "On a law action tried to the court we will not weigh the evidence or pass upon the credibility of witnesses." *Northrup v. Foster*, 204 N.W.2d 889, 891 (Iowa 1973). Although the evidence could have supported a

different conclusion, we find substantial evidence supports the trial court's finding that Michael Ryan was not a party to the loan agreement.

### C. Repayment

Gannon contends the substantial evidence does not support the district court's finding that the terms of the loan agreement did not include the repayment of interest. He also contends the court erred when it determined the debt was satisfied at the time the Ryans tendered a check for $5500. He maintains that because the check was never cashed, the debt was never satisfied.

We find substantial evidence supports the court's factual finding that the terms of the loan did not include payment of interest on the outstanding principal, thus only $5500 was owed to Gannon. "Even though this court may arrive at a different conclusion from the evidence, the real test is the sufficiency of the evidence to support the conclusion of the fact finder." *Id.* Although Gannon testified the loan agreement included repayment of ten percent interest and provided the written statement Maureen created in support of this contention, Maureen testified that the interest was voluntarily included as a "gesture of thanks." She further testified that Gannon had never mentioned the payment of interest until sending the December 2011 letter. Similarly, Michael testified that he did not agree to pay interest at the time the loan agreement was entered into and did not learn of Gannon's expectation to be paid interest until receiving the December 2011 letter.

Gannon maintains, in the alternative, even if the terms of the loan did not include payment of interest, the district court erred in its determination that the outstanding $5500 debt had been satisfied before trial. He contends the court

erred when it determined the Ryans' tendering of the check was sufficient to satisfy the debt. "It is the well-settled rule of law in this state that the delivery of a check directly to a creditor does not constitute payment, unless in due course of time the check is actually cashed." *Schwab v. Roberts*, 236 N.W. 19, 24 (Iowa 1935). Here, it is undisputed that the Ryans tendered a check for $5500 in December 2011. It is also undisputed that it was not deposited or cashed before trial. Because the debt cannot be satisfied until the check is deposited, we reverse the district court's ruling that the Ryans' debt was satisfied before trial. We remand to the district court with directions to enter judgment in favor of Gannon for the outstanding debt of $5500 and to instruct Gannon to return the December 2011 check to the Ryans.

**IV. Conclusion.**

We find the court did not abuse its discretion in admitting evidence of bias and its error in taking judicial notice of two court files was not prejudicial. We also find substantial evidence supports the court's finding that Michael Ryan was not a party to the loan agreement and repayment of interest was not a term of the loan agreement. Because we find the court erred in its conclusion that the debt was satisfied at the time the Ryans tendered the check for $5500, we reverse and remand with directions for judgment to be entered for Gannon in the sum of $5500 with instructions for him to return the Ryans' previous check. Accordingly, we affirm in part, reverse in part, and remand with directions.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**