**IN THE COURT OF APPEALS OF IOWA**

No. 14-0184
Filed March 11, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ROSEMARY HARRIS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Nancy S. Tabor,

Judge.


        Rosemary Harris appeals from her convictions for fraudulent practice in

the third degree and tampering with records.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney

General, Katherine Walling, Student Legal Intern, Michael Walton, County

Attorney, and Patrick A. Mcelyea, Assistant County Attorney, for appellee.


        Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.  Tabor,

J., takes no part.

**VOGEL, P.J.**

On February 11, 2015, in *State v. Harris*, 14-0814, 2014 WL 7800459 (Iowa Ct. App. Feb. 11, 2015), our court filed the original opinion affirming Harris's convictions. We then granted Harris's petition for rehearing, to further address an issue involving jury instruction No. 12. Consequently, this opinion now vacates and replaces the previous decision.

Following a jury trial, Rosemary Harris appeals from her convictions for fraudulent practice in the third degree and tampering with records. Harris argues substantial evidence does not support the jury's conclusion she intentionally falsified a claim; alternatively, she frames this as an ineffective-assistance-of-counsel argument. She also claims trial counsel was ineffective for failing to object to various jury instructions, as well as the admission of two witnesses' testimony and three exhibits, which contained unauthenticated documents and consisted of hearsay.

We conclude that, because substantial evidence supported the jury's guilty verdict, trial counsel was not ineffective for failing to assert the specific grounds now raised in the appeal—namely, that the State failed to prove either charge. We further conclude that both jury instructions challenged now were proper statements of the law, and given that the exhibits of which Harris now complains were duplicative, she was not prejudiced by counsel's failure to object. Furthermore, the testimony presented by the investigating officer that the forms required the claims for payment be truthful was not hearsay, such that counsel had a duty to object. However, we preserve for possible postconviction-relief proceedings Harris's claim that trial counsel was ineffective for failing to object to

the testimony of the previous employee who stated she had concerns the business was consistently billing for services not performed. Consequently, we affirm her convictions.

## I. Factual and Procedural Background

As of April 2013, Harris owned Peace of Mind—a business operated out of Harris's home—that hires contractors to take care of disabled people in their own homes. Peace of Mind bills Iowa Medicaid directly, which compensates the business for the services provided. Iowa Medicaid requires a form called a "claim for targeted medical care" to be completed and submitted. After submission, the business will receive compensation. The types of services performed, along with the dates, must be provided on the claim form. Consequently, the business must rely on the supporting documents—that is, the daily service records—so as to be able to accurately report which services were provided and when. The service provider fills out and signs the daily service records, which the business is then required to keep on file so the Iowa Medicaid's Fraud Control Unit can periodically review all records.

On April 18, 2013, Peace of Mind filed a claim form with Iowa Medicaid stating it had provided forty-three hours of services to Dorothy Whitfield, which was billed for $817. Whitfield is Harris's mother. The Fraud Control Unit decided to investigate this claim and requested the daily service records on which the claim relied. Harris submitted twelve such records signed by Felicia Smith, one of the providers who worked for Peace of Mind. An investigation followed, and on October 9, 2013, Harris was charged with fraudulent practices in the third degree, in violation of Iowa Code section 714.8 and .11 (2013), and tampering

with records, in violation of Iowa Code section 715A.5. The trial information was later amended to reflect the more specific dates in which Harris engaged in the illegal conduct—April 1 to May 6, 2013. Harris pled not guilty, and a jury trial was held on January 15, 2014.[1]

Several witnesses testified during the one-day trial, including Smith. When the investigation initially began, Smith told the Fraud Control Unit that she had not been told to fill out the forms. However, after being informed she faced charges for theft, she stated she filled out twelve forms based on notes Harris had given her and she had only provided one day of care for Whitfield. She did think the services had been provided, but she had not been the one to perform the care. She also testified she sometimes confused the daily service records and the request for service forms.

Melanie Thiering, an employee at Peace of Mind from March 2012 until June 2013, testified as well. From March until November 2012 she served as an officer manager. Then after a fallout with Harris, she was demoted to being a provider of services. As the officer manager, she was responsible for reviewing and organizing the records. However, she stated she did not see records for Whitfield's care until the summer of 2012, when the State's review of the records began. She stated she and Harris filled out 100 or so daily service reports, and she assumed the care had been provided to Whitfield. She further testified she was concerned Peace of Mind was billing the State for more hours than were

---

[1] We note an inconsistency in the electronic record—the verdict was file stamped the day before the trial began.

actually provided and, accordingly, she reported her concerns to Kevin Greethurst, a criminal investigator with the Medicaid Fraud Control Unit.

Greethurst became the lead investigator, and at trial, he testified he pulled billing records for services provided to Whitfield from April 1 to April 19, 2013. The records reflected Peace of Mind had received payment for the services in the amount of $817 on May 6, 2013. The State also used Greethurst as a foundation witness to enter into evidence various Medicaid documents. Specifically, Greethurst accessed a database known as MMIS, in which information from the Medicaid system is stored, and took a screen shot of the billing information for Whitfield. He also printed off two blank documents, a daily service record and a claim form. These were entered into evidence as Exhibits 13, 14, and 15, respectively.

Harris testified as well. She asserted she and her son, Devon Tate, had provided services to Whitfield, and the daily service reports were accurate. Tate's testimony supported this claim, although the timing of the visits reflected in the service reports and the visits to which he testified differed substantially. Harris further testified she kept her mother's records separate due to the volume of records in Peace of Mind and she had not asked Smith to fill out the service records; rather, she asked Smith to complete a service agreement for Whitfield. Harris speculated Smith was confused regarding the instructions and filled out the service records instead. She further claimed the prior records for Whitfield's care had been destroyed during a flood.

Harris also stated once she realized that Smith had completed the service records Harris attempted to call Iowa Medicaid to correct the error but claimed

"they just refused to talk to me." Asserting she used a landline, she offered no phone records to support her version of events. Additionally, she was contacted in May regarding the investigation into her claim forms. Cell phone records Harris submitted showed both incoming and outgoing phone calls to Iowa Medicaid but not until July and August 2013, long after the investigation had begun.

Following the close of the evidence, Harris moved for judgment of acquittal, arguing the "testimony of the defense witnesses showed there were services done and the State still hasn't shown that there was any intent to defraud anybody. [The State hasn't] proved the amount of fraud. [The State hasn't] proved that records were intentionally destroyed." Following argument from both parties, the district court denied the motion. The jury then returned a verdict of guilty as to both counts. On February 7, 2014, Harris was sentenced to 240 days on each count, suspended. Harris appeals.

## II. Standard of Review

With regard to Harris's ineffective-assistance claims, she may raise this issue on direct appeal if the record is adequate to address the claim. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). We may either decide the record is adequate and issue a ruling on the merits, or we may choose to preserve the claim for postconviction proceedings. *Id.* We review ineffective-assistance-of-counsel claims de novo. *Id.* To succeed on this claim, the defendant must show, first, that counsel breached an essential duty and, second, that she was prejudiced by counsel's failure. *Id.* If the defendant's ineffective-assistance

claim lacks prejudice, we may decide the claim on that ground alone. *See Ledezma v. State*, 626 N.W.2d 134, 144 (Iowa 2001).

To the extent we are directly reviewing Harris's claim the district court erred in denying her motion for judgment of acquittal, we review the court's decision for correction of errors at law. *See State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005).

## III. Substantial Evidence

Harris first asserts substantial evidence does not support the jury's guilty verdicts, and therefore, the district court erred when it denied her motion for judgment of acquittal; alternatively, she frames this as an ineffective-assistance-of-counsel claim. Specifically, she argues the evidence was not sufficient to show she knowingly made or caused to be made false statements to Iowa Medicaid or that she falsified a record with the intent to deceive Iowa Medicaid, given she offered evidence that services had actually been provided to Whitfield. She further claims her actions did not fall within the purview of Iowa Code section 249A.8 because the service records were not an "application for payment." The State responds Harris failed to preserve error on this specific argument. Alternatively, it asserts she cannot establish prejudice because the ultimate issue was a question of credibility, which the jury, as factfinder, was free to determine.

As an initial matter, we do not agree with the State's argument Harris failed to preserve error with regard to her overall claim substantial evidence did not support the jury's verdicts. In her motion for judgment of acquittal, she stated:

> [F]or it to be a fraudulent practice, the person has to knowingly fail to disclose material facts in application for payment or services. In this case there's absolutely no evidence before the jury that this was intentionally done or that there was any intent to either hide facts or fail to disclose material facts. Application for payment, there's not one iota of evidence that payment was even made in this matter. Also, as far as Tampering with Records, the element is with the intent to deceive, injure or conceal any wrongdoing. The State has not shown that this was done by the defendant with the intent to deceive anyone, injure anyone or do any wrongdoing.

This demonstrates Harris adequately presented the argument she now asserts on appeal to the district court. Consequently, the court considered the argument and, when it denied Harris's motion, ruled on the issue. Error was therefore preserved. *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012).

When reviewing a ruling on a motion for judgment of acquittal, we view the record in the light most favorable to the non-moving party—here, the State—and make all legitimate inferences and presumptions that may be reasonably deduced from the evidence. *See Quinn*, 691 N.W.2d at 407. If substantial evidence supports the verdict, we will affirm. *Id.* Evidence is substantial if it would convince a reasonable trier of fact the defendant is guilty beyond a reasonable doubt. *Id.*

To convict Harris of fraudulent practices, the State was required to prove she knowingly made or caused to be made false statements or misrepresentations of material facts in an application for payment of services to a medical assistance program. *See* Iowa Code § 249A.8. Additionally, to prove the second charge of falsifying documents, the State was required to show Harris falsified or concealed a writing or record with the intent to deceive or conceal any wrongdoing on her part. *See id.* § 715A.5.

The jury was presented with conflicting evidence at trial. Harris and Tate testified the services billed to Iowa Medicaid, as reflected in the daily service reports submitted to the Fraud Control Unit, were in fact provided to Whitfield. However, Tate stated he never worked from 8:00 p.m. until midnight, which were the times contained in the service reports. Moreover, Smith testified that Harris instructed her to fill out and sign those documents even though she had not been the one to provide the services. Thiering also testified she had concerns Peace of Mind was billing Iowa Medicaid for services not actually provided to Whitfield. Additionally, phone records contradict Harris's claim that she was the one to call Iowa Medicaid, ostensibly to alert them to the fact that, though Smith had signed the records, she had not been the one to provide services.

While Harris is correct that there is evidence Smith confused the service report and the service agreement documents, this is not enough to conclude the district court erred in denying her motion for judgment of acquittal on both counts. Viewing the evidence in the light most favorable to the State, the jury was free to reject the testimony of Harris and conclude the service reports had been falsified, and that the subsequent claim form submitted to Iowa Medicaid billed for services that were not in fact performed. *See Quinn*, 691 N.W.2d at 407; *see also State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) (stating credibility determinations are within the province of the jury, and it is within the factfinder's purview to accept or reject testimony when deciding factual issues of the case). Consequently, the evidence submitted at trial supports both convictions, and the district court properly denied Harris's motion for judgment of acquittal.

Harris takes issue with the fact the service records were not the actual forms submitted for billing, and therefore they are not an "application for payment" as contemplated by Iowa Code section 249A.8.[2] However, we find no case law supporting Harris's interpretation of the statute. Furthermore, though the service reports documented the days and services that were purportedly delivered, the claim form ultimately submitted showed the same services performed and relied on the daily service reports. Given this factual basis, Harris's actions fall within the purview of section 249A.8. Therefore, trial counsel was not ineffective for failing to assert this ground in the motion for judgment of acquittal, given it would have been unsuccessful. *See State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999) (holding trial counsel has no duty to assert a meritless argument).

**IV. Jury Instructions**

Harris next claims trial counsel was ineffective for failing to object to jury instructions Nos. 12 (entitled fraudulent practices) and 15 (labeled tampering with records). With respect to instruction No. 12, Harris argues it should have specified Harris or "the defendant" as the person whom the jury must find guilty. She further asserts it does not specify a time period in which the offense occurred, which allowed the jury to convict her of uncharged conduct and thus constituted a fatal variance. Regarding instruction No. 15, Harris contends the phrasing, "If you find that the State has not proven both 1 and 2 then Rosemary

---

[2] Harris did not assert this argument at the district court level, and therefore, error was not preserved. *See Lamasters*, 821 N.W.2d at 864. However, we will address this argument in the ineffective-assistance context to determine if Harris suffered prejudice through counsel's failure to present this argument to the district court.

Harris is Not Guilty under Count 2," improperly lessened the State's burden to prove both elements of the tampering-with-records charge. The State counters that jury instruction No. 15 was a proper recitation of the law,[3] and, with the instructions viewed as a whole, instruction No. 12 did not amount to a fatal variance.

Jury instruction No. 12 stated:

A person who knowingly
1. Makes or causes to be made [a]
2. False statement or misrepresentation of material facts or knowingly fails to disclose material facts in application for payment or services rendered
3. By a provider in the medical assistance program.
If the State has proved all three of the elements, the defendant is guilty under Count 1. You must then determine the degree of Fraudulent Practice, as explained to you in Instruction No. 14. If the State has failed to prove any of the elements, the defendant is not guilty.

Harris concedes the date of the offense is not a material element of the crime. *See* Iowa Code § 249A.8. Consequently, the State did not have the burden of proving the offenses occurred within the time period alleged in the indictment. *See State v. Griffin*, 386 N.W.2d 529, 532 (Iowa Ct. App. 1986) (holding when the date is not a material element of the crime, the State does not have the burden of proving when the offense occurred).

Additionally, the lack of a date in the instruction, combined with Thiering's testimony that she had concerns Peace of Mind was billing for services not

---

[3] In its brief, the State cites *State v. Carey*, 695 N.W.2d 505 (Iowa Ct. App. 2005) (holding the defendant "has not proved both elements of a meritorious due process claim"), to support its argument the proper phrasing was used in the jury instruction; it then asserts counsel was not incompetent because: "Using language the same way Iowa's Court of Appeals does is not incompetent." We would like to note we appreciate the State's faith that our court constructs phrases in a grammatically competent manner.

completed in early 2012,[4] did not amount to a fatal variance. The charging instrument properly set forth the dates in which Harris allegedly committed the offenses; consequently, she was given notice of the charges against her, and no fatal variance with respect to the trial information occurred. *See State v. Grice*, 515 N.W.2d 20, 22–23 (Iowa 1994) (noting a fatal variance occurs when the evidence presented at trial does not support the charged conduct). The fact that some evidence admitted at trial indicated Harris might have improperly billed Iowa Medicaid at some other point in time does not affect her right to know the charges against her, even when the jury instruction did not list the exact dates of the offense. *See generally State v. Bell*, 223 N.W.2d 181, 184–85 (Iowa 1974) (holding a variance is only fatal when the defendant is deprived of the right to know the charges against him and defend against them at trial; consequently, the fact the indictment alleged a day on which the defendant did not beat his daughter did not constitute a fatal variance). Therefore, trial counsel was not ineffective for failing to object to instruction No. 12 on the grounds there was a fatal variance.

Harris next asserts instruction No. 12 did not properly identify Harris as the person who was required to make the false statement or misrepresentation for

---

[4] Harris complains of the following exchange:

> Q: Did you see the billing records that Rosemary Harris prepared? A: I had seen . . . . [A] billing record laying on the table that she had printed out.
> Q: Did that reflect the change in the hours? A: It reflects how many hours they got each month.
> Q: Okay. And was that always the same? A: Whatever hours they got each month, yes, but that didn't reflect what we did.
> Q: So you're saying somebody might submit a service record for eight hours a month on a client, but the information that you saw while in the office indicated the State was being billed for ten? A: Yes.
> Q: Was that consistent? A: I do believe so.

the State to prove the fraudulent-practice charge; consequently, trial counsel was ineffective for failing to object to the instruction on these grounds.

We do not find Harris's argument persuasive. The evidence at trial showed that, even if Smith filled out the forms, Harris told her to do so and gave her the notes to copy onto to the forms. Specifically, Smith testified she relied on these notes when completing the form and had further assumed the work had been completed. Furthermore, the instruction identifies "the defendant" as the person the jury must find not guilty if the State failed to prove any of the elements. The instruction is therefore a proper statement of the law containing the elements the State was required to prove to convict Harris of fraudulent practice. *See* Iowa Code § 714.8 & .11 (2013). Consequently, trial counsel was not ineffective for failing to object to this instruction. *See Greene*, 592 N.W.2d at 29 (holding trial counsel has no duty to assert a meritless objection).

Harris's next objection is to Jury instruction No. 15, which stated:

> 1. On or about the period of April 1, 2013 to and including May 6, 2013, Rosemary Harris falsified a writing or record; AND
> 2. Rosemary Harris did so with the intent to deceive the Iowa Medicaid Unit OR to conceal a wrongdoing.
> If you find that the State has proven both 1 and 2 above, then Rosemary Harris is Guilty under Count 2. If you find that the State has not proven *both* 1 *and* 2 then Rosemary Harris is Not Guilty under Count 2.

(Emphasis added.)

Harris asserts the last sentence should have read: "If you find that the State has not proven *either* 1 *or* 2 then Rosemary Harris is Not Guilty under Count 2." However, this amounts to the same meaning as instruction No. 15. The last sentence of the instruction requires the State to prove both elements of

the crime. If the State failed to prove *both* element one *and* element two, then Harris is not guilty. This is a proper recitation of the law and the State's burden of proof. *See State v. Templeton*, 258 N.W.2d 380, 383 (Iowa 1977) (noting it is the State's burden to prove all elements of the offense beyond a reasonable doubt); *see also* Iowa Code § 715A.5. Consequently, trial counsel was not ineffective for failing to assert this meritless objection. *See Greene*, 592 N.W.2d at 29.

## V. Evidentiary Issues

Harris's final argument asserts trial counsel was ineffective for failing to object to the introduction of Medicaid documents and the testimony of Greethurst, who acted as a foundation witness and testified to the contents of the documents. She contends the State's Exhibits 13, 14, and 15 were inadmissible for lack of foundation and authentication; additionally, she asserts they were hearsay. Harris also takes issue with the testimony of Thiering—who stated she had concerns Peace of Mind was billing for services not provided—as inadmissible prior-bad-acts under Iowa Rule of Evidence 5.404(b). The State responds the evidence was duplicative, and therefore Harris did not suffer prejudice.

We agree with the State's argument the exhibits of which Harris now complains were duplicative of other properly admitted evidence. State's Exhibit 13 was a screenshot showing $817 was paid to Peace of Mind for Whitfield's care. However, defense Exhibit D was the claim form requesting payment for Whitfield's care in the amount of $817. These two exhibits, with exhibit D being properly admitted, show the same evidence—that is, the amount Peace of Mind

claimed for the ostensible services provided to Whitfield. Additionally, State's Exhibits 14 and 15 were blank forms, which were duplicative of State's Exhibits 1–12 and defense Exhibit D. Consequently, regardless of the propriety of using Greethurst as a foundation witness, the evidence entered through his testimony is duplicative of the evidence properly admitted by either Harris or the State. Therefore, Harris was not prejudiced by the admission of the evidence she now challenges on appeal. *See State v. Neiderbach*, 837 N.W.2d 180, 205 (Iowa 2013) (holding evidence is not prejudicial if it is duplicative of other, properly admitted evidence).

Harris further objects to the testimony of Greethurst, who stated the person providing the information was obliged to fill out the forms truthfully, as required by the language on the forms. Greethurst's testimony of which Harris now complains consists of the following exchange:

> Q: When [someone] become[s] a CDAC provider, are they agreeing that they're going to abide by the terms on the back page?
> A: Yes.
> Q: And what kind of terms are those? A: Basically that they have to be forthcoming and truthful on all the documentation that they submit.

Exhibit 14, which is the form that Harris signed and the exhibit to which Greethurst was testifying, stated: "I certify that . . . . The information provided on the front of this claim is true, accurate, and complete." Thus, Greethurst's testimony was not admitted for showing the truth of the matter asserted—that is, Harris herself, when signing the form, had an obligation to provide truthful and accurate information. Rather, Greethurst testified to the fact that anyone signing the form as a CDAC provider was obligated to provide truthful information, as per

the form's language. This testimony is therefore not hearsay within the meaning of Iowa Rule of Evidence 5.801, and trial counsel was not ineffective for failing to object.

Harris's last argument asserts trial counsel was ineffective for failing to object to the testimony of Thiering when she stated she believed Peace of Mind was billing Iowa Medicaid for services not completed prior to April 2012, given that this is both uncharged conduct and evidence of prior bad acts. Upon review of the record, we conclude it is not adequate to resolve this claim. *See State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004) ("Ordinarily, ineffective assistance of counsel claims are best resolved by postconviction proceedings to enable a complete record to be developed and afford trial counsel an opportunity to respond to the claim."). Consequently, we preserve this claim for possible postconviction-relief proceedings, where a more complete record may be established. *See* S*traw*, 709 N.W.2d at 133.

Having considered Harris's arguments, we affirm her convictions. However, we preserve for possible postconviction-relief proceedings her argument counsel was ineffective for failing to object to the testimony of Thiering.

**AFFIRMED.**