**IN THE COURT OF APPEALS OF IOWA**

No. 14-1796
Filed December 9, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JEAN BELOVED,**
    Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Douglas F. Staskal,

Judge.


        Jean Beloved appeals his convictions for two counts of sexual abuse in

the second degree. **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Robert P. Ranschau,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant

Attorney General, for appellee.


        Considered by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VOGEL, Presiding Judge.**

Jean Beloved appeals his convictions for two counts of sexual abuse in the second degree. He first asserts he was denied his constitutional right to be present for all of his trial and the district court erred when it did not continue the trial when Beloved did not appear on the second day. He next argues his confession to the crime was privileged, as he communicated this to the leader of a prayer service, who he asserts is a minister within the meaning of the statute. He also contends counsel was ineffective for failing to object to an expert's statement that she believed the victim needed therapy, arguing that this was an impermissible opinion as to the victim's credibility. His final claim asserts the district court abused its discretion when imposing consecutive sentences.

We conclude Beloved voluntarily absented himself from the proceedings and therefore waived his right to be present. Moreover, we agree with the district court the person to whom Beloved confessed was not a minister and, consequently, the communication was not privileged. Trial counsel was also not ineffective for failing to object to the witness's statement that the victim should receive counseling, as this was not an opinion as to the victim's credibility. Finally, the district court did not abuse its discretion when imposing consecutive sentences. Consequently, we affirm Beloved's convictions and sentence.

**I. Factual and Procedural Background**

At trial, the jury could have found the following facts. M.H., the victim, was between seven and nine years old at the time of the incidents. She informed various family members that between June 2012 and January 2013, Beloved sexually abused her. As recited in the trial information and as borne out by

M.H.'s trial testimony, the incidents of abuse included: (1) once when M.H. was visiting Beloved's residence, they were in the bedroom where he told her to remove her pants and underwear, after which he proceeded to kiss her and touch her on the vagina with his tongue; (2) when she was in Beloved's daughters' room playing hide and seek, Beloved kissed her on the lips and rubbed his hand on her vaginal area while both were clothed; (3) in a parking lot in the back seat of his vehicle, Beloved used his hands to touch M.H.'s vaginal area and his mouth to touch her breasts; and (4) when M.H. was at her grandmother's house, Beloved rubbed his penis against her pubic bone and vaginal area.

On March 21, 2013, the State charged Beloved with four counts of sexual abuse in the second degree, class "B" felonies in violation of Iowa Code sections 709.1 and 709.3(2) (2011). Trial on the matter commenced at 9:00 a.m. on June 9, 2014, and proceeded until 4:00 p.m. On June 10, Beloved was not present in the courtroom at 9:00 a.m., when trial was scheduled to resume. Trial counsel left Beloved a voicemail. Beloved responded by email, stating his father—who resides in New York—was terminally ill and would likely die within a few hours, and therefore, Beloved needed to attend to him. Trial was continued until 1:00 p.m., at which time Beloved still had not appeared. Trial counsel moved for a two-week continuance and, alternatively, a mistrial. The district court denied both motions, as it doubted Beloved's credibility, and also found he had voluntarily absented himself from the proceedings as a stall tactic after the bulk of the State's evidence had been presented. The court concluded Beloved had therefore waived his right to be present; thus, the trial resumed without Beloved.

On the previous day of trial, several witnesses testified. Quovadis Marshall stated he formerly worked as a missionary for the International House of Prayer, a nondenominational evangelical organization that has a facility in a mall with a prayer room, which is open to the public at all times. His role was "one of the prayer leaders for a two-hour prayer slot." He noted he was a "missionary," not a minister, as he was neither licensed nor ordained.

Marshall further testified that in early February 2013, after a prayer meeting he led, Beloved approached Marshall and requested to speak with him. Marshall stated it seemed as if Beloved wanted to get something "off his chest." Marshall further testified that Beloved told him he had been accused of sexually abusing M.H., and that he was in fact guilty. Marshall replied that God would forgive Beloved but he should turn himself into the authorities. After Beloved left, Marshall called the police and informed them of Beloved's statements.

Also testifying was Tamera Bibbins, a forensic interviewer who works at Blank's Children's Hospital in Des Moines. She interviewed M.H. on February 13, 2013. Bibbins testified to her interactions with M.H. during the interview, which included M.H.'s statements that Beloved had sexually assaulted her. Bibbins also stated she had recommended that M.H. receive therapy.

Following the close of evidence, the State dismissed one count, and the jury found Beloved guilty on two counts and not guilty on the third. The sentencing hearing was held on October 13, 2014, at which time the district court sentenced Beloved to twenty-five years on each count, to run consecutively. Beloved appeals his convictions and sentence.

## II. Standard of Review

We review constitutional issues, including ineffective-assistance-of-counsel claims, de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). With regard to evidentiary matters, our review is for correction of errors at law, though the district court's decision on whether or not privilege exists is discretionary. *State v. Richmond*, 590 N.W.2d 33, 34 (Iowa 1999). Claims challenging the imposition of a sentence are reviewed for an abuse of discretion. *State v. Evans*, 672 N.W.2d 328, 331 (Iowa 2003).

## III. Continuance

Beloved first claims the district court erred when it allowed the trial to proceed in his absence. He asserts he did not waive his right to be present, given that his father was in extremely ill health—purportedly in his last hours—which constituted a sudden emergency. Therefore, his constitutional right to be present at his trial was violated when the trial proceeded in his absence.

A defendant has a constitutional and statutory right to be present at his trial. *State v. Wise*, 472 N.W.2d 278, 279 (Iowa 1991). However, this right can be waived if the defendant is voluntarily absent. *See* Iowa R. Crim. P. 2.27(1), (2)(a). For this absence to be deemed voluntary, the defendant "must be aware of the processes taking place, of his right and of his obligation to be present, and he must have no sound reason for remaining away." *Taylor v. United States*, 414 U.S. 17, 19, n.3 (1973).

The record indicates the *Taylor* factors are satisfied. Beloved was present for the first day of trial and was informed it would proceed the next morning. Trial counsel also stated he had informed Beloved that his presence at trial was

necessary. The State noted Beloved had previously sought several continuances, and the circumstances further indicated Beloved did not have a "sound reason" for his absence. *See id.* As the district court stated in its ruling denying Beloved's motions to continue and for mistrial:

> I don't believe that this is a sudden emergency that took the defendant away. There is evidence that his father has been ill for a lengthy period of time. The defendant has had a considerable amount of time to deal with that, plan for it and make whatever arrangements need to be made to address issues that could have arisen with his father's health.[1]
>
> The circumstances, again, call this into question as to whether the defendant's father is truly on his death bed. As the prosecutor pointed out, he did not call the court or his attorney. We had to call him.
>
> When he was advised that the court was intending to resume trial at 1:00, he asked for a continuance of two weeks. I think the defendant is just stalling trying to avoid the inevitable resolution of this case.
>
> To me that means he is voluntarily absent.
> . . . .
> . . . [I]f you balance this, the defendant's right to be present at the trial versus the public's interest in the trial being completed, the case has been on file for more than a year. It involves alleged sexual abuse of a child, a very, very, very serious charge with someone then potentially being convicted of that being out in the public.

We agree with the court that these circumstances amount to a voluntary absence within the meaning of Iowa Rule of Criminal Procedure 2.27(2)(a), and thus, Beloved waived his right to be present at trial. *See Taylor*, 414 U.S. at 19. Furthermore, as the State notes, most of its case had been presented on the first day of trial, including the testimony of the victim. Consequently, no constitutional right was violated when the court proceeded with the trial in Beloved's absence.

---

[1] We also note that, at the time of the sentencing hearing held on October 13, 2014, Beloved's father was still alive.

*See State v. Hendren*, 311 N.W.2d 61, 62 (Iowa 1981) (holding no constitutional violation occurred when the defendant voluntarily absented himself from the trial).

**IV. Evidentiary Claim**

Beloved next argues the court erred in finding his confession to Marshall was not a privileged communication. He asserts because Marshall was a prayer leader for the International House of Prayer his statements to Marshall were made in confidence and consequently, his communications were privileged and should not have been admitted.

Privileged communication is protected by statute, which states:

> A practicing attorney, counselor . . . or confidential clerk of any such person, who obtains information by reason of the person's employment, or a member of the clergy shall not be allowed, in giving testimony, to disclose any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the function of the person's office according to the usual course of practice or discipline.

Iowa Code § 622.10(1). To fall within the statute's purview and constitute privileged communication, the interaction must be (1) confidential, (2) entrusted to a person in his professional capacity, and (3) necessary and proper for the discharge of the function of the person's office. *State v. Richmond*, 590 N.W.2d 33, 35 (Iowa 1999). The burden is on the defendant to establish these elements. *Id.*

As the district court concluded, and as Beloved conceded, Marshall was not a member of the clergy. Nonetheless, Beloved argues, "Marshall may not consider himself to be a member of the clergy, but he does fulfill a role that is delegated to the clergy in many other churches." However, Marshall testified he

was not a priest, pastor, or confessor, as he was neither ordained nor licensed. Nor did his limited role in leading a prayer meeting render him a member of the clergy. Also, the International House of Prayer is not a church. Rather, it is a nondenominational mission organization, whose prayer room is never closed and anyone is welcome at any time. The strip mall location where Beloved met Marshall is staffed by several people, including various musicians, singers, and prayer leaders.

Furthermore, the circumstances of the conversation also indicate this was not privileged communication within the meaning of section 622.10(1). While the State concedes Beloved's statements to Marshall were made in confidence, these were not made to a member of the clergy in his professional capacity. As the district court—relying on Marshall's testimony—found, Beloved was simply getting something "off his chest." Marshall's response was to then tell Beloved that God would forgive him, but he should nonetheless turn himself into the authorities. Given Marshall had no clerical duties other than to participate as a prayer leader over a two-hour time slot,[2] and he did not inhabit a role that required him to hear confessions, Marshall listening to Beloved "get something off his chest" was not a duty or role that Marshall served.

Because Beloved's statements to Marshall were not a privileged communication, the district court did not abuse its discretion in admitting

---

[2] Beloved's pro se brief sets forth facts to which he does not cite in the record, nor does the testimony support his recitation of the record. Therefore, we decline to take into account these allegations. *See State v. Weiland*, 202 N.W.2d 67, 68 (Iowa 1972) (noting appellate courts cannot consider facts that are outside the record).

Marshall's testimony. Consequently, we affirm the ruling of the district court denying Beloved's motion to exclude Marshall's testimony.

**V. Ineffective Assistance of Counsel**

Beloved further asserts trial counsel was ineffective for failing to object to the testimony of Bibbins, the forensic interviewer, who stated she recommended M.H. receive therapy. Beloved claims this was an impermissible opinion that speaks to M.H.'s credibility and, therefore, should have been excluded. Consequently, he asserts trial counsel was ineffective for not moving to strike this statement.

A defendant may raise an ineffective-assistance claim on direct appeal if the record is adequate to address the claim. *Straw*, 709 N.W.2d at 133. We may either decide the record is adequate and issue a ruling on the merits, or we may choose to preserve the claim for postconviction proceedings. *Id.* To succeed on this claim, the defendant must show, first, that counsel breached an essential duty and, second, that he was prejudiced by counsel's failure. *Id.*

A witness is not permitted to "vouch" for a victim's credibility. *State v. Brown*, 856 N.W.2d 685, 689 (Iowa 2014). With regard to this issue, our supreme court has stated:

> Although we are committed to the liberal view on the admission of psychological evidence, we continue to hold expert testimony is not admissible merely to bolster credibility. Our system of justice vests the jury with the function of evaluating a witness's credibility. The reason for not allowing this testimony is that a witness's credibility is not a fact in issue subject to expert opinion. Such opinions not only replace the jury's function in determining credibility, but the jury can employ this type of testimony as a direct comment on the defendant's guilt or innocence. Moreover, when an expert comments, directly or indirectly, on a witness's credibility, the expert is giving his or her scientific certainty stamp of approval on

the testimony even though an expert cannot accurately opine when a witness is telling the truth. In our system of justice, it is the jury's function to determine the credibility of a witness.

*Id.* (internal citation omitted).

At trial, the following testimony occurred:

> Q: Is it typical in your experience that a child who is being sexually abused would want to spend time with the offender? A: The literature shows that it's not uncommon for a child to want to spend time with or even have a positive relationship with someone who is sexually abusing them. I think we often assume that the child will want to have nothing to do with that person, but if there is a positive aspect of that relationship, a child does still get benefit from that. If it's a person who gives them positive attention or even buys them things or does special things with them, the child still would like that part of it even if the abuse is happening.
> Q: As a result of your interview with [M.H.], did you make any recommendations? A: There was a recommendation made that she begin individual therapy.

Comparing various statements by experts closely parsed in our case law, we do not find Bibbins's statements explicitly bolstered M.H.'s credibility. Rather, the testimony in which she recommended M.H. receive therapy was given with an unspecified reason for the recommendation, which, as the State points out, could have been made for a variety of reasons.[3] Bibbins's recommendation did not vouch for M.H.'s credibility. *See id.* (holding a witness impermissibly vouched for the victim's credibility when he stated the authorities should investigate the victim's allegations, which indirectly indicated the statements were true).

Moreover, this testimony is distinguishable from Bibbins's statements in *State v. Dudley*, 856 N.W.2d 668 (Iowa 2014).[4] In *Dudley*, Bibbins gave a two-fold recommendation: (1) that she believed the victim should receive therapy and

---

[3] For instance, even if the allegations were untrue, M.H. might nonetheless benefit from therapy simply because she stated, or perhaps just believed, Beloved abused her.
[4] Bibbins was the same expert who testified at both trials.

(2) the victim should stay away from the defendant, basing both on her belief that the defendant sexually abused the victim. 856 N.W.2d at 678. Therefore, our supreme court held that her testimony crossed the line into an opinion regarding the victim's credibility. *Id.* at 678 (noting: "This testimony crossed the line because she testified she believed B.O. was in fact sexually abused by Dudley; thus, indirectly vouching for her credibility"). Here, there is only the recommendation that M.H. receive counseling, which standing alone does not cross the line into an opinion that M.H. was telling the truth about the sexual assaults. *See id.* Consequently, counsel did not breach an essential duty when he did not object to Bibbins's testimony, and Beloved's ineffective-assistance claim is without merit. *See State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999) (noting counsel is not ineffective if he fails to make a meritless objection).

**IV. Sentence**

Beloved's final claim argues the district court abused its discretion by imposing consecutive sentences. We do not agree. In its colloquy, the district court stated: "The reason for the consecutive sentences are the separate and serious nature of the offenses, the fact that they're offenses against children, the fact that the defendant absconded during trial, and the fact that he is a significant danger to the community if not incarcerated."

"Sentencing decisions are cloaked with a strong presumption in their favor. A sentence will not be upset on appellate review unless the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure, such as trial court consideration of impermissible factors." *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000). The record here reflects the

district court considered the proper factors—both during its colloquy as well as in the sentencing order—and imposed consecutive sentences accordingly. *See State v. Laffey*, 600 N.W.2d 57, 62 (Iowa 1999) (noting the court must "determine which sentence will provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others." (internal citation omitted)). Consequently, we find no abuse of discretion.

For these reasons, we affirm Beloved's convictions and sentence.

**AFFIRMED.**